**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

__Southern__ District of __New York__
(State)

Case number (*If known*): _____ Chapter __11__

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Spirit Airlines, Inc. |
| 2. | **All other names debtor used in the last 8 years** <br> Include any assumed names, trade names, and *doing business as* names | None. |
| 3. | **Debtor's federal Employer Identification Number (EIN)** | 38-1747023 |

4. **Debtor's address**

| **Principal place of business** | **Mailing address, if different from principal place of business** |
|---|---|
| 1731 Radiant Drive <br> Number    Street | _____ <br> Number    Street |
| _____ | P.O. Box |
| Dania Beach    FL    33004 <br> City    State    ZIP Code | _____ <br> City    State    ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Broward <br> County | _____ <br> Number    Street |
| | New York    NY    _____ <br> City    State    ZIP Code |

5. **Debtor's website (URL)**    https://www.spirit.com/

---

Official Form 201    Voluntary Petition for Non-Individuals Filing for Bankruptcy    page 1

Debtor **Spirit Airlines, Inc.**  
Name

Case number (*if known*)_____

6. **Type of debtor**
   - ● Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
   - ☐ Partnership (excluding LLP)
   - ☐ Other. Specify: _____

7. **Describe debtor's business**

   A. *Check one:*
   - ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
   - ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
   - ☐ Railroad (as defined in 11 U.S.C. § 101(44))
   - ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
   - ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
   - ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
   - ● None of the above

   B. *Check all that apply:*
   - ☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
   - ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
   - ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

   C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
   
   4 8 1 1

8. **Under which chapter of the Bankruptcy Code is the debtor filing?**

   A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

   *Check one:*
   - ☐ Chapter 7
   - ☐ Chapter 9
   - ● Chapter 11. *Check **all** that apply*:
     - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
     - ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
     - ● A plan is being filed with this petition.
     - ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
     - ● The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
     - ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.
   - ☐ Chapter 12

Debtor __Spirit Airlines, Inc._____    Case number (*if known*)_____
       Name

9. **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

   If more than 2 cases, attach a separate list.

   ■ No
   ☐ Yes.    District _____    When _____    Case number _____
                                              MM / DD / YYYY
             District _____    When _____    Case number _____
                                              MM / DD / YYYY

10. **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

    List all cases. If more than 1, attach a separate list.

    ■ No
    ☐ Yes.    Debtor _____    Relationship _____
              District _____    When _____
                                                              MM / DD / YYYY
              Case number, if known _____

11. **Why is the case filed in *this district*?**

    Check all that apply:

    ■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

    ☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

12. **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

    ■ No
    ☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

    **Why does the property need immediate attention?** (*Check all that apply*.)

    ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
       What is the hazard? _____

    ☐ It needs to be physically secured or protected from the weather.

    ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

    ☐ Other _____

    **Where is the property?** _____
                              Number    Street
                              _____
                              _____    _____  _____
                              City                                State  ZIP Code

    **Is the property insured?**
    ☐ No
    ☐ Yes. Insurance agency _____
           Contact name    _____
           Phone           _____

---

■ **Statistical and administrative information**

Official Form 201    Voluntary Petition for Non-Individuals Filing for Bankruptcy    page 3

Debtor  **Spirit Airlines, Inc.**
Name

Case number (*if known*)_____

| | |
|---|---|
| **13. Debtor's estimation of available funds** | Check one:<br>● Funds will be available for distribution to unsecured creditors.<br>☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. |
| **14. Estimated number of creditors** | ☐ 1-49           ☐ 1,000-5,000         ● 25,001-50,000<br>☐ 50-99          ☐ 5,001-10,000        ☐ 50,001-100,000<br>☐ 100-199       ☐ 10,001-25,000       ☐ More than 100,000<br>☐ 200-999 |
| **15. Estimated assets** | ☐ $0-$50,000             ☐ $1,000,001-$10 million         ☐ $500,000,001-$1 billion<br>☐ $50,001-$100,000       ☐ $10,000,001-$50 million         ● $1,000,000,001-$10 billion<br>☐ $100,001-$500,000     ☐ $50,000,001-$100 million        ☐ $10,000,000,001-$50 billion<br>☐ $500,001-$1 million    ☐ $100,000,001-$500 million       ☐ More than $50 billion |
| **16. Estimated liabilities** | ☐ $0-$50,000             ☐ $1,000,001-$10 million         ☐ $500,000,001-$1 billion<br>☐ $50,001-$100,000       ☐ $10,000,001-$50 million         ● $1,000,000,001-$10 billion<br>☐ $100,001-$500,000     ☐ $50,000,001-$100 million        ☐ $10,000,000,001-$50 billion<br>☐ $500,001-$1 million    ☐ $100,000,001-$500 million       ☐ More than $50 billion |

### Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **11/18/2024**
MM / DD / YYYY

✗ **/s/ Fred Cromer**                                  **Fred Cromer**
Signature of authorized representative of debtor        Printed name

Title **Chief Financial Officer**

Debtor  **Spirit Airlines, Inc.**
Name

Case number (*if known*)_____

### 18. Signature of attorney

✗ /s/ Marshall S. Huebner
Signature of attorney for debtor

Date  11/18/2024
MM / DD / YYYY

Marshall S. Huebner
Printed name

Davis Polk & Wardwell LLP
Firm name

450 Lexington Avenue
Number    Street

New York                                   NY        10017
City                                       State     ZIP Code

(212) 450 4000                             marshall.huebner@davispolk.com
Contact phone                              Email address

2601094                                    NY
Bar number                                 State

Official Form 201A (12/15)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SPIRIT AIRLINES, INC.,** | **Case No. 24-_____ (___)** |
| **Debtor.** | |

## Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11

1. If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is  001-35186  .

2. The following financial data is the latest available information and refers to the debtor's condition on  9/30/2024  .

    a. Total assets      $ 9,493,049,000

    b. Total debts (including debts listed in 2.c., below)      $ 8,990,557,000

    c. Debt securities held by more than 500 holders

| | | | | Approximate number of holders:[1] |
|---|---|---|---|---|
| secured ☒ | unsecured ☐ | subordinated ☐ | Senior Secured Notes[2] | |
| secured ☐ | unsecured ☒ | subordinated ☐ | 2025 Convertible Notes | |
| secured ☐ | unsecured ☒ | subordinated ☐ | 2026 Convertible Notes | |
| secured ☒ | unsecured ☐ | subordinated ☐ | Fixed-rate Class A 2015-1 EETC due through 2028 | |
| secured ☒ | unsecured ☐ | subordinated ☐ | Fixed-rate Class AA 2017-1 EETC due through 2030 | |
| secured ☒ | unsecured ☐ | subordinated ☐ | Fixed-rate Class A 2017-1 EETC due through 2030 | |
| secured ☒ | unsecured ☐ | subordinated ☐ | Fixed-rate Class B 2017-1 EETC due through 2026 | |

    d. Number of shares of preferred stock      0
    e. Number of shares common stock      109,518,296

    Comments, if any: _____

3. Brief description of debtor's business:  The debtor is a major air carrier that provides scheduled air transportation for passengers in the United States and certain other jurisdictions.

4. List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor: U.S. Global Jets ETF;  The Vanguard Group;  BlackRock, Inc.

---

[1] The Debtor does not know the precise number of holders for any debt securities issued by it or its subsidiaries.

[2] The Debtor is a guarantor with respect to the Senior Secured Notes which were issued by its subsidiaries.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **SPIRIT AIRLINES, INC.,** | Case No. 24-_____ (__) |
| Debtor. | |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, and to enable the Judges to evaluate possible disqualification or recusal, the following are corporations, other than a governmental unit, that directly or indirectly own 10% or more of any class of the Debtor's equity interest:

| Shareholder | Approximate Percentage of Shares |
|---|---|
| U.S. Global Jets ETF | 10.9633% |

Fill in this information to identify the case:
Debtor name: Spirit Airlines, Inc.
United States Bankruptcy Court for the: Southern District of New York
Case number (If known): _____

☐ Check if this is an amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Wilmington Trust, National Association<br>1100 North Market Street<br>Wilmington, DE 19801 | Jacqueline Solone<br>Vice President<br>EMAIL - jacquelinesolone@wilmingtontrust.com<br>PHONE - (302) 651-1000 | 1.000% Convertible Unsecured Notes due 2026 | | | | $500,000,000 |
| 2 | U.S. Department Of The Treasury<br>1500 Pennsylvania Avenue<br>Washington, DC 20220 | Janet Yellen<br>United States Secretary of the Treasury<br>EMAIL - janet.yellen@treasury.gov<br>PHONE - (800) 829-4933 | Unsecured Term Loan | | | | $136,000,000 |
| 3 | International Aero Engines<br>400 Main St East<br>Hartford, CT 06108-0968 | Kimberly Kinsley<br>President<br>EMAIL - kimberly.kinsley@utc.com<br>PHONE - 860-565-4321 | Trade Payable | Unliquidated | | | $42,741,000* |
| 4 | Wilmington Trust, National Association<br>1100 North Market Street<br>Wilmington, DE 19801 | Jacqueline Solone<br>Vice President<br>EMAIL - jacquelinesolone@wilmingtontrust.com<br>PHONE - (302) 651-1000 | 4.750% Convertible Unsecured Notes due 2025 | | | | $25,100,000 |
| 5 | Lufthansa Technik<br>193 Weg Beim Jaeger<br>Hamburg, 22335<br>Germany | Harald Gloy<br>Chief Operating Officer & CHRO<br>EMAIL - harald.gloy@dlh.de<br>PHONE - +49 (40) 5070 3356 | Trade Payable | Unliquidated | | | $16,111,000 * |
| 6 | AGI Ground, Inc<br>9130 S Dadeland Blvd<br>Suite 1801<br>Miami, FL 33156-7858 | Jared Azcuy<br>Chief Executive Officer<br>EMAIL - jazcuy@atsstl.com<br>PHONE - (305) 740-3253 | Trade Payable | Unliquidated | | | $14,406,000 * |
| 7 | Charles Tombras Advertising, Inc<br>620 S Gay St<br>Knoxville, TN 37902-1603 | Charles Tombras<br>Chief Executive Officer<br>EMAIL - charlie@tombras.com<br>PHONE - (865) 524-5376 | Trade Payable | Unliquidated | | | $10,205,000 * |
| 8 | Microsoft Licensing, Gp<br>1 Microsoft Way<br>Redmond, WA 98052 | Hossein Nowbar<br>Chief Legal Officer<br>EMAIL - hosseinn@microsoft.com<br>PHONE - (206) 706-3732 | Trade Payable | Unliquidated | | | $8,139,000 * |
| 9 | Gat Airline Ground Support<br>244 City Circle<br>Suite 2200A<br>Peachtree City, GA 30269 | Richard Thiel<br>President<br>EMAIL - richard.thiel@gatags.com<br>PHONE - (251) 633-3888 | Trade Payable | Unliquidated | | | $7,242,000 * |
| 10 | Navitaire, Inc<br>333 South 7th Street<br>Suite 1700<br>Minneapolis, MN 55402 | Dave Evans<br>Chief Executive Officer<br>EMAIL - dave.evans@navitaire.com<br>PHONE - (612) 317-7000 | Trade Payable | Unliquidated | | | $3,294,000 * |
| 11 | Ryan Inc.<br>Three Galleria Tower<br>13155 Noel Road<br>Suite 100<br>Dallas, TX 75240-5090 | G. Brint Ryan<br>Chairman; Chief Executive Officer<br>EMAIL - brint.ryan@ryan.com<br>PHONE - 972.934.0022 | Trade Payable | Unliquidated | | | $2,533,000 * |
| 12 | Prime Flight Aviation Services<br>3 Sugar Creek Center Blvd<br>Suite 450<br>Sugar Land, TX 77478-2216 | Dan Bucaro<br>Chief Executive Officer<br>EMAIL - dbucaro@primeflight.com<br>PHONE - (281) 942-6800 | Trade Payable | Unliquidated | | | $2,157,000 * |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 13 | Broward County Aviation Department<br>320 Terminal Dr.<br>Suite 200<br>Fort Lauderdale, FL 33315 | John Bruno<br>Chief Information Officer<br>EMAIL - jbruno@broward.org<br>PHONE - (954) 359-6100 | Trade Payable | | | | $2,018,000 |
| 14 | Haeco Americas Airframe Services<br>623 Radar Road<br>Greensboro, NC 27410-6221 | Richard Sell<br>Chief Executive Officer<br>EMAIL - richard.sell@haeco.com<br>PHONE - (336) 668-4410 | Trade Payable | Unliquidated | | | $2,000,000 * |
| 15 | TA Connections De & II, LLC<br>3280 Peachtree Rd<br>Suite 2400<br>Atlanta, GA 30305 | Mike Appleton<br>President<br>EMAIL - mike@hotelconnections.com<br>PHONE - (866) 966-8866 | Trade Payable | Unliquidated | | | $1,775,000 * |
| 16 | Worldwide Flight Services<br>SATS Inflight Catering Centre 1<br>20 Airport Boulevard<br>Singapore, 819659<br>Singapore | Manfred Seah<br>Chief Financial Officer<br>EMAIL - manfred_seah@sats.com.sg<br>PHONE - (656) 542-5555 | Trade Payable | Unliquidated | | | $1,736,000 * |
| 17 | Swissport USA Inc<br>Flughofstrasse 54<br>Opfikon, 8152<br>Switzerland | Warwick Brady<br>President; Chief Executive Officer<br>EMAIL - warwick.brady@swissport.com<br>PHONE - +41 (10) 849-45-28 | Trade Payable | Unliquidated | | | $1,689,000 * |
| 18 | Messier-Goodrich<br>Inovel Parc Sud<br>7 rue du Général Valérie André<br>Vélizy-Villacoublay, 78140<br>France | Francois Bastin<br>Chief Executive Officer<br>EMAIL - francois.bastin@safrangroup.com<br>PHONE - +33 (1) 46 29 81 00 | Trade Payable | Unliquidated | | | $1,523,000 * |
| 19 | G2 Secure Staff, LLC<br>400 E Las Colinas Blvd<br>Irving, TX 75039 | Julie Gostic<br>President<br>EMAIL - jgostic@g2securestaff.com<br>PHONE - (972) 915-6979 | Trade Payable | Unliquidated | | | $1,394,000 * |
| 20 | Perimeter Logistics Inc<br>2800 Story Road West<br>Irving, TX 75038-5267 | Rajan Sobhani<br>President<br>EMAIL - raj.sobhani@shippgl.com<br>PHONE - (877) 701-1919 | Trade Payable | Unliquidated | | | $1,372,000 * |

# Written Consent of the Board of Directors
## of Spirit Airlines, Inc.
## November 18, 2024

The undersigned, being all of the directors (each, a "**Director**" and, collectively, the "**Directors**") of Spirit Airlines, Inc. ("**the Company**"), hereby authorize, take, approve, and consent to the following actions, and adopt the following resolutions by written consent in accordance with the applicable certificate of incorporation and bylaws of the Company, and the applicable laws of the State of New York:

WHEREAS, the Directors have reviewed and had the opportunity to ask questions about the materials presented by the management and the legal and financial advisors of the Company regarding the liabilities and liquidity of the Company, the strategic alternatives available, and the impact of the foregoing on the Company's businesses;

WHEREAS, the Directors have had the opportunity to consult with the management and the legal and financial advisors of the Company to fully consider each of the strategic alternatives available to the Company;

WHEREAS, the Directors have considered presentations by management and the financial and legal advisors of each of the Company regarding a restructuring support agreement in form and substance substantially as proposed (together with the exhibits thereto, the "**Restructuring Support Agreement**");

WHEREAS, the Company has negotiated the Restructuring Support Agreement in good faith and at arm's-length with the Consenting Senior Secured Noteholders and Consenting Convertible Noteholders (as defined in the Restructuring Support Agreement);

WHEREAS, the Restructuring Support Agreement provides that it can be terminated by the Company, at the direction of the Directors, if continued performance thereunder would be inconsistent with the exercise of such Directors' fiduciary duties or applicable law;

WHEREAS, the Directors have reviewed and considered presentations by management and the financial and legal advisors of each of the Company regarding the advantages and disadvantages of the Company soliciting acceptances of the chapter 11 plan of reorganization contemplated in and attached to the Restructuring Support Agreement (as may be amended, modified, or supplemented from time to time, the "**Plan**");

WHEREAS, the Directors, in connection with the Restructuring Support Agreement, have considered presentations by management and the financial and legal advisors of the Company regarding the launch of an equity rights offering (the "**Equity Rights Offering**") in form and substance substantially as proposed (the "**Equity Rights Offering Documents**");

WHEREAS, the Directors, in connection with the Restructuring Support Agreement, have considered presentations by management and the financial and legal advisors of the Company regarding a backstop commitment agreement in form and substance substantially as proposed (the "**Backstop Commitment Agreement**");

WHEREAS, the Directors have received, reviewed, and considered the recommendations of, and the materials presented by, the management and the legal and financial advisors of the Company regarding the relative risks and benefits of pursuing a case under the provisions of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**");

WHEREAS, the Directors have determined that it is desirable and in the best interests of the Company to commence Chapter 11 Case (as defined below);

WHEREAS, the Directors have reviewed with the management and the legal and financial advisors of the Company the resolutions set forth below; and

WHEREAS, the Directors (i) have determined that taking the actions set forth below and the transactions contemplated hereby are advisable and fair to, and in the best interests of, the Company and its stakeholders and, therefore, have (ii) adopted the resolutions set forth below and authorized and approved the transactions, agreements, and actions contemplated hereby:

I.     **Commencement of Chapter 11 Case**

RESOLVED, that the Directors have determined, after due consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company and its stakeholders that the Company shall be, and hereby is, authorized to file, or cause to be filed, a petition seeking relief (the "**Chapter 11 Case**") under the provisions of chapter 11 of the Bankruptcy Code, and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States;

RESOLVED, FURTHER, that each officer, director, or manager of the Company (each, an "**Authorized Person**"), is authorized, empowered, and directed to (a) execute and file in the name and on behalf of the Company, and under its corporate seal or otherwise, all plans, petitions, schedules, statements, motions, lists, applications, pleadings, orders, and other documents in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), (b) employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers, and other professionals, and (c) take and perform any and all further acts and deeds that such Authorized Person, who may act without the joinder of any other Authorized Person, deems necessary, proper, or desirable in connection with the Chapter 11 Case, including (i) negotiating, executing, delivering, and performing under any and all documents, agreements, certificates, and instruments in connection with the transactions and professional retentions set forth in this resolution, (ii) appearing as necessary at all bankruptcy proceedings in the Bankruptcy Court on behalf of the Company, and (iii) paying all such expenses where necessary or appropriate in order to carry out fully the intent, and accomplish the purposes, of the resolutions adopted herein; and

RESOLVED, FURTHER, that the Company is authorized, and each Authorized Person shall be, and hereby is, authorized, empowered, and directed on behalf of and in the name of the Company, to seek to have its Chapter 11 Case administered by the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

2

## II.  Retention of Advisors

RESOLVED, that each Authorized Person shall be, and hereby is, authorized, empowered, and directed on behalf of and in the name of the Company to retain the law firm of Davis Polk & Wardwell LLP, located at 450 Lexington Avenue, New York, NY 10017, as counsel for the Company in the Chapter 11 Case, subject to Bankruptcy Court approval;

RESOLVED, FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered, and directed on behalf of and in the name of the Company to retain Alvarez & Marsal North America, LLC, located at 540 West Madison Street, Suite 1800, Chicago, IL 60661, as financial and compensation advisor for the Company in the Chapter 11 Case, subject to Bankruptcy Court approval;

RESOLVED, FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered, and directed on behalf of and in the name of the Company to retain Perella Weinberg Partners, located at 757 Fifth Avenue, New York, NY 10153, as investment banker for the Company in the Chapter 11 Case, subject to Bankruptcy Court approval;

RESOLVED, FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered, and directed on behalf of and in the name of the Company to retain Debevoise & Plimpton LLP, located at 66 Hudson Boulevard, New York, NY 10001, as fleet counsel for the Company in the Chapter 11 Case, subject to Bankruptcy Court approval;

RESOLVED, FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered, and directed on behalf of and in the name of the Company to retain the law firm of Walkers Cayman Islands as Cayman counsel for the Company in the Chapter 11 Case, subject to Bankruptcy Court approval;

RESOLVED, FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered, and directed on behalf of and in the name of the Company to retain O'Melveny & Myers LLP, located at 1201 Avenue of the Americas, Suite 1700, New York, NY 10019, as labor counsel for the Company in the Chapter 11 Case, subject to Bankruptcy Court approval;

RESOLVED, FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered, and directed on behalf of and in the name of the Company to retain Morris, Nichols, Arsht & Tunnell LLP, located at 1201 North Market Street, 16th Floor, Wilmington, DE 19801, as conflicts counsel for the Company in the Chapter 11 Case, subject to Bankruptcy Court approval;

RESOLVED, FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered, and directed on behalf of and in the name of the Company to retain Epiq Corporate Restructuring, LLC, as claims, noticing, solicitation, and administrative agent for the Company in the Chapter 11 Case, subject to Bankruptcy Court approval; and

RESOLVED, FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered, and directed on behalf of and in the name of the Company to retain any other legal counsel, accountants, financial advisor, restructuring advisor, or other professionals as the Authorized Person deems necessary, appropriate, or advisable, to represent and assist the Company

in carrying out its respective duties and responsibilities and exercising its respective rights under the Bankruptcy Code.

### III.    DIP Credit Agreement and Use of Cash Collateral

RESOLVED, that the Directors have determined, after due consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company and its stakeholders to (a) enter into a senior secured superpriority debtor-in-possession term loan credit agreement (together with all exhibits, schedules, and annexes thereto, as altered, amended, supplemented, or otherwise modified from time to time, the "**DIP Credit Agreement**") and any other documentation relating to the DIP Credit Agreement (including, without limitation, pledge agreements, guarantee agreements, security agreements, intercreditor agreements, control agreements, promissory notes, mortgages, intellectual property security agreements, financing statements, swap agreements, collateral access agreements, acknowledgment letters, payoff letters, fee letters, termination agreements, intellectual property release agreements, control agreement terminations, and other documents under which a security interest in the assets of the Company is being created), and each other agreement, document, or instrument required thereunder, including any amendments thereto, collectively and together with the DIP Credit Agreement in the form and upon the terms and conditions as an Authorized Person may approve (such approval to be conclusively established by such Authorized Person's execution and delivery thereof) (collectively, the "**DIP Documents**"), (b) perform the Company's obligations under the DIP Documents, including payment of the fees and expenses related thereto, and take all actions in accordance therewith that any of the Authorized Persons may deem necessary or advisable to consummate the transactions contemplated thereby and (c) obtain the benefits from the use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, the "**Cash Collateral**"), which is security for the Company's prepetition secured lenders under certain credit facilities by and among the Company and the lenders party thereto;

RESOLVED, FURTHER, that the Company is hereby authorized, and each Authorized Person shall be and hereby is authorized, empowered, and directed on behalf of and in the name of the Company, together with the Company's advisors, to (a) seek interim and final approval of the DIP Documents and the use of Cash Collateral from the Bankruptcy Court pursuant to an order of the Bankruptcy Court substantially on the terms presented to the Directors (the "**DIP Order**") and (b) take all actions (including negotiating and executing any agreements, documents, or certificates) necessary or advisable to implement the DIP Order, including (i) paying any fees and expenses related thereto, (ii) guarantying the obligations of the DIP loan parties under the DIP Documents, (iii) providing for adequate protection to the certain of the Company's prepetition secured lenders in accordance with section 363 of the Bankruptcy Code, (iv) granting superpriority status, first priority priming liens, and perfected security interests in, and pledging, mortgaging, and granting deeds of trust with respect to, its right, title, and interest in and to its properties and assets, whether now owned or hereafter acquired, to the extent required to secure the obligations of the DIP loan parties under the DIP Documents, with such changes therein and additions thereto as any Authorized Person executing the same may, in their absolute discretion, deem necessary or appropriate, the execution of the DIP Documents to be conclusive evidence of the approval thereof, (v) executing and delivering any additional or further agreements, instruments, or documents for the use of Cash Collateral in connection with the Chapter 11 Case, which agreement(s) may require the Company to grant adequate protection and security interests to certain of the Company's

4

prepetition secured lenders, with such changes therein and additions thereto as any Authorized Person executing the same may in their absolute discretion deem necessary or appropriate, the taking of such action or the execution and delivery thereof to be conclusive evidence of the approval thereof, and (vi) consummating the transactions contemplated by the foregoing, including incurring the obligations stated in connection therewith; and

RESOLVED, FURTHER, that the Company is authorized, and each Authorized Person shall be and hereby is authorized, empowered, and directed on behalf of and in the name of the Company, to (a) negotiate and agree to any changes to the DIP Order and DIP Documents as they believe is appropriate and necessary under the circumstances in their reasonable judgment, (b) execute and deliver any amendments, modifications, renewals, replacements, consolidations, substitutions, and extensions of the DIP Credit Agreement (including amendments increasing the amount of credit available under the DIP Credit Agreement and/or extending the maturity of the same) and the DIP Documents, (c) cause the Company to enter into, execute, deliver, certify, file and/or record, and perform under the DIP Documents and such other documents, agreements, instruments, and certificates as may be required by the DIP Order or the DIP Documents, (d) consummate the transactions contemplated by the DIP Documents, and (e) do such other things that shall, in their absolute discretion, be necessary, desirable, proper, or advisable to give effect to the foregoing resolutions, which determination shall be conclusively evidenced by their execution thereof.

## IV.    Restructuring Support Agreement and the Chapter 11 Plan

RESOLVED, that the Directors have determined, after due consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company and its stakeholders to enter into the Restructuring Support Agreement and to pursue the Plan, as attached thereto, pursuant to sections 1125(g) and 1126(b) of the Bankruptcy Code and rule 3018(b) of the Federal Rules of Bankruptcy Procedure, and that the Company's performance of its obligations under the Restructuring Support Agreement and the solicitation of votes in favor of the Plan be and hereby is, in all respects, authorized and approved;

RESOLVED FURTHER, that the Company is hereby authorized, and each Authorized Person shall be, and hereby is, authorized, empowered and directed on behalf of and in the name of the Company, together with the Company's advisors, to take all actions (including, without limitation, to negotiate and execute any agreements, documents, or certificates) necessary to enter into the Restructuring Support Agreement and to consummate the transactions contemplated thereby in connection with the Chapter 11 Case, and that the Company's performance of its obligations under the Restructuring Support Agreement hereby is, in all respects, authorized and approved;

RESOLVED FURTHER, that the Directors have determined, after due consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company and its stakeholders that the Authorized Persons file or cause to be filed the Plan, the related disclosure statement, and all other papers or documents (including any amendments) related thereto and to take any and all actions that they deem necessary or

5

appropriate to pursue confirmation and consummation of a plan of reorganization materially consistent with the Plan;

RESOLVED FURTHER, that the Company is hereby authorized, and each Authorized Person shall be, and hereby is, authorized, empowered and directed on behalf of and in the name of the Company, together with the Company's advisors, to file all other documents deemed necessary to confirm a plan of reorganization materially consistent with the Plan, including, but not limited to, any amendments to and modifications of the Plan; and

RESOLVED FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered and directed on behalf of and in the name of the Company, together with the Company's advisors, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, and file any and all such instruments as each, in his or her discretion, may deem necessary or advisable in order to consummate the Plan if confirmed by the Bankruptcy Court.

## V.    **Equity Rights Offering**

RESOLVED, that the Directors have determined, after due consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company and its stakeholders to enter into the Equity Rights Offering Documents;

RESOLVED FURTHER, that the Company is hereby authorized, and each Authorized Person shall be, and hereby is, authorized, empowered and directed on behalf of and in the name of the Company, together with the Company's advisors, to take all actions (including, without limitation, to negotiate and execute any agreements, documents, or certificates) necessary to enter into the Equity Rights Offering Documents and to consummate the transactions contemplated thereby, with such changes therein and additions thereto as any Authorized Person executing the same may in his or her discretion deem necessary or appropriate, the execution of the Equity Rights Offering Documents to be conclusive evidence of the approval thereof; and

RESOLVED FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered and directed on behalf of and in the name of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, and perform, the Equity Rights Offering Documents and such other documents, agreements, instruments and certificates as may be required by the Equity Rights Offering Documents.

## VI.    **Backstop Commitment Agreement**

RESOLVED, that the Directors have determined, after due consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company and its stakeholders to enter into the Backstop Commitment Agreement;

RESOLVED FURTHER, that the Company is hereby authorized, and each Authorized Person shall be, and hereby is, authorized, empowered and directed on behalf of and in the name of the Company, together with the Company's advisors, to take all actions (including, without

limitation, to negotiate and execute any agreements, documents, or certificates) necessary to enter into the Backstop Commitment Agreement and to consummate the transactions contemplated thereby, with such changes therein and additions thereto as any Authorized Person executing the same may in his or her discretion deem necessary or appropriate, the execution of the Backstop Commitment Agreement to be conclusive evidence of the approval thereof; and

RESOLVED FURTHER, that each Authorized Person shall be, and hereby is, authorized, empowered and directed on behalf of and in the name of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, and perform, the Backstop Commitment Agreement and such other documents, agreements, instruments and certificates as may be required by the Backstop Commitment Agreement.

### VII. General Authorization and Ratification

RESOLVED, that each Authorized Person shall be, and hereby is, authorized, empowered, and directed, on behalf of and in the name of the Company, to (a) do and perform all such acts and things and enter into, execute, acknowledge, deliver, and file all such certificates, agreements, acknowledgments, instruments, contracts, statements, and other documents and to take such further actions as such Authorized Person may deem necessary or appropriate to effect the intent and accomplish the purposes of the foregoing resolutions, the taking of such action or the execution and delivery thereof to be conclusive evidence of the approval thereof, (b) perform the Company's obligations under the Bankruptcy Code and exercise all rights of the Company under the Bankruptcy Code (including all rights with respect to contracts, agreements, and leases under sections 365 of the Bankruptcy Code), with all such actions to be performed in such manner, and all such certificates, instruments, guaranties, notices, and documents to be executed and delivered in such form, as the Authorized Person performing or executing the same shall approve, the performance or execution thereof to be conclusive evidence of the approval thereof by such Authorized Person and the Company, and (c) pay fees and expenses in connection with the transactions contemplated by the foregoing resolutions;

RESOLVED, FURTHER, that the omission from this written consent of any (a) agreement, document, or other arrangement contemplated by any of the agreements, documents, or instruments described in the foregoing resolutions or (b) action to be taken in accordance with any requirement of any of the agreements or instruments described in the foregoing resolutions shall in no manner derogate from the authority of the Authorized Persons to take all actions necessary, desirable, advisable, or appropriate to consummate, effectuate, carry out, or further the transactions contemplated by, and the intent and purposes of, the foregoing resolutions;

RESOLVED, FURTHER, that the Directors have received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waive any right to have received such notice;

RESOLVED, FURTHER, that any and all actions taken by any officer or director of or advisor to the Company prior to the date of adoption of the foregoing resolutions, which would have been authorized by the foregoing resolutions but for the fact that such actions were taken prior to such date, be, and each hereby is, ratified, approved, confirmed, and adopted as a duly authorized act of the Company in all respects and for all purposes; and

7

      RESOLVED, FURTHER, that this consent may be executed in one or more counterparts, and delivered by electronic means, each of which, when so executed, shall be treated in all manner and respects and for all purposes as one and the same original, written consent, and shall be considered to have the same binding legal effect as if it were an original manually signed counterpart hereof delivered in person.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the undersigned, constituting the board of directors of Spirit Airlines, Inc. has caused this written consent to be executed as of the date first set forth above.

Name: Edward Christie III
Title: Director

Name: Mark B. Dunkerley
Title: Director

Name: H. McIntyre Gardner
Title: Chair, Director

Name: Robert D. Johnson
Title: Director

Name: Barclay G. Jones III
Title: Director

Name: Christine P. Richards
Title: Director

Name: Myrna M. Soto
Title: Director

Name: Richard Wallman
Title: Director

[*Signature page to Chapter 11 Board Resolutions*]

2

**Fill in this information to identify the case and this filing:**

Debtor Name __Spirit Airlines, Inc._____

United States Bankruptcy Court for the: _____Southern___ District of _New York_
(State)

Case number (*If known*): _____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors  12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____
- ■ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ■ Other document that requires a declaration___Corporate Ownership Statement_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  __11/18/2024__          ✗ /s/ Fred Cromer_____
MM / DD / YYYY                           Signature of individual signing on behalf of debtor

                                         Fred Cromer_____
                                         Printed name

                                         Chief Financial Officer_____
                                         Position or relationship to debtor

Official Form 202         **Declaration Under Penalty of Perjury for Non-Individual Debtors**