WILLIAM K. HARRINGTON  
UNITED STATES TRUSTEE, REGION 2  
Office of the United States Trustee  
Alexander Hamilton U.S. Custom House  
One Bowling Green, Rm 534  
New York, NY 10004  
Tel. (212) 510-0500  
By:    Shara Cornell, Esq.  
       Trial Attorney

OBJECTION DEADLINE: DEC. 10, 2024  
HEARING DATE: DEC. 17, 2024

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x  
In re:                                           :      Chapter 11  
                                                :  
SPIRIT AIRLINES, INC, *et al.*,[1]          :      Case No. 24-11988-SHL  
                                                :  
         Debtors.                     :      (Jointly Administered)  
---------------------------------------------------------------x

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR**  
**ENTRY OF AN ORDER SCHEDULING A COMBINED HEARING FOR**  
**DISCLOSURE STATEMENT AND PLAN**

     William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**") hereby submits this objection (the "**Objection**") to the Motion (the "**Motion**") of Spirit Airlines, Inc, *et al.* (collectively, the "**Debtors**") for entry of an order scheduling a combined hearing for Disclosure Statement and Plan of Reorganization (the "**Motion**") [ECF Dkt. No. 115]. In support of his opposition, the United States Trustee states as follows:

---

[1] The Debtors' names and last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions are as follows: Spirit Airlines, Inc. (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

1

### I.  PRELIMINARY STATEMENT

These bankruptcy cases are multi-billion-dollar mega cases with thousands of constituents. The first case was filed on November 18, 2024, and the second set of four cases were filed on November 26, 2024, not even a month ago. The Official Committee of Unsecured Creditors (the "**UCC**") was appointed on November 29, 2024. Retention applications have not been approved. A second day hearing has not been held. The Debtors have not filed schedules or statements of financial affairs and at their request, have received an extension until January 2025 to file these critical documents. So many "usual" and "customary" acts and orders attendant with mega (and in some instances all chapter 11) cases have not occurred. The Debtors seek an expedited and truncated process which is unusual for a case of this magnitude in this jurisdiction. However, while the Debtors have categorized this matter as similar to a prepackaged case with a simple balance sheet restructuring, the Debtors have not established any basis for such deviation from standard practices at this time for a case of this magnitude. The Motion is premature and should be withdrawn without prejudice to renew at a time when more information is known about these cases and all parties have had a meaningful opportunity to review the documents.

Here, the Debtors' own Restructuring Support Agreement ("**RSA**") does not even contemplate such an expedited schedule for confirmation of the Debtors plan of reorganization. The RSA requires entry of an order confirming a plan by February 17, 2024. RSA [ECF Dkt. No. 2] at pg. 62 of 312. Indeed, if the Debtors were to seek separate hearings on a disclosure statement and confirmation of a plan, both could be noticed with more than enough time to meet the timelines of the RSA.

The Disclosure Statement (defined below) and Plan (defined below) are almost 400 pages combined. Again, this is a multi-billion-dollar mega case where there are details and nuances that

2

only come with the bankruptcy filing of a public company. These details will take time for parties to digest, obtain counsel if necessary, and then vote in a meaningful way. General Order M-634 ("**M-634**") was not designed to deprive creditors and shareholders of public companies a meaningful opportunity to analyze and vote on a plan. Instead, M-634 was clearly aimed at preventing needless expense in smaller or mid-market cases where the plan and disclosure statement generally contain the same contents and therefore a separate disclosure statement or opportunity to object to a disclosure statement would be superfluous. That is not the case here. Care must be taken at the disclosure statement stage to ensure both accuracy in the information provided and whether "adequate information" with "sufficient detail" is in fact provided to the thousands of shareholders, equity holders, creditors, and other interested and voting parties in order to make an "informed judgment about the plan." *See* 11 U.S.C. § 1125(a)(1). Accordingly, based on the current facts and circumstances of these bankruptcy cases, a stand-alone hearing on the Debtors' Disclosure Statement is necessary at this time in order to comply with the terms of the Bankruptcy Code and Bankruptcy Rules.

## II.    BACKGROUND

1. On November 18, 2024 (the "**Petition Date**"), Debtor Spirit Airlines, Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On November 25, 2024, Spirit Airlines, Inc.'s subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF Dkt. No. 121].

4. On November 29, 2024, the Court entered the Order Extending the Time to File Schedules and Statements of Financial Affairs (the "**Extension Order**"). ECF Dkt. No. 60. The Extension Order provided the Debtors with an additional 45 days by which to file their schedules and statements of financial affairs, through and including January 2, 2024. Extension Order at ¶ 2. The Extension Order also allowed the Debtors to seek further extension without prejudice. As of the date of this Objection, no schedules or statements of financial affairs have been filed on the electronic docket.

5. On November 29, 2024, the United States Trustee appointed the UCC pursuant to section 1102 of the Bankruptcy Code [ECF Dkt. No. 133].

6. Also on November 29, 2024, the United States Trustee filed the Notice of and Instructions for 341 Meeting of Creditors (the "**341 Meeting**") to be held on December 10, 2024. ECF Dkt. No. 131.

7. On November 19, 2024, the Debtors filed a request for a status conference (the "**Status Conference**") with the Court to discuss the future act of filing the Motion, in accordance with M-634. *See* ECF Dkt. No. 49. The Status Conference occurred on November 25, 2024.

8. On November 26, 2024, the Debtors filed the Disclosure Statement (the "**Disclosure Statement**") [ECF Dkt. No. 114] and the Plan of Reorganization (the "**Plan**") [ECF Dkt. No. 113].

9. The Plan contains *inter alia* third- party releases. *See, generally*, Plan, Art. VIII, "Effect of Confirmation of the Plan," pgs. 67-75 of 89.

4

10. Also on November 26, 2024, the Debtors filed the Motion. The Motion, *inter alia*, seeks entry of an order conditionally approving the Disclosure Statement, establishing deadlines regarding confirmation of the Plan, and approving a combined Disclosure Statement and confirmation hearing (the "**Combined Hearing**") for January 29, 2024. To that end, the Motion proposes that the deadline for submitting votes would be January 21, 2025 (the "**Voting Deadline**").

11. The Motion further argues, *inter alia*, that a Combined Hearing "would promote judicial economy and the expedient restructuring of the Debtors' estates." Motion at ¶ 22.

### III. OBJECTION

Section 1125(b) of the Bankruptcy Code states,

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

11 U.S.C. § 1125(b). Section 1125(a)(1) states in relevant part,

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. § 1125(a)(1).

The plain meaning of section 1125 is that the proponent of a plan (the Debtors herein) must provide creditors with a plan and disclosure statement containing adequate information <u>before</u> solicitation of acceptance or rejection or a proposed plan. The use of the conjunction "and" linking

5

the two documents together signifies that the debtor must provide two separate documents, one of which must first be approved by the court. *See Ortiz v. Secretary of Defense*, 41 F.3d 738, 742 (D.C. Cir. 1994) (stating that the use of the conjunction "and" means that both provisions of the regulation must be satisfied). Without a separate disclosure statement containing adequate information, the Debtors cannot comply with Section 1125(b). To that end, Bankruptcy Rule 3016(b) also requires that a debtor file a separate disclosure statement:

> In a chapter 9 or 11 case, a disclosure statement under §1125 of the Code or evidence showing compliance with §1126(b) shall be filed with the plan or within a time fixed by the court, unless the plan is intended to provide adequate information under §1125(f)(1). If the plan is intended to provide adequate information under §1125(f)(1), it shall be so designated and Rule 3017.1 shall apply as if the plan is a disclosure statement.

Fed. R. Bankr. P. 3016(b). The rules of statutory construction apply to the Federal Rules of Bankruptcy Procedure. *See United States v. Petri*, 731 F.3d 833, 839 (9th Cir. 2013) (*quoting Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988)); *see also Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 123 (1989). There is no ambiguity in Rule 3016(b) and therefore debtors <u>shall</u> file a disclosure statement.

Section 1125 and Rule 3016 are the default rules for filing and approval of disclosure statements – requiring separate plans and disclosure statements along with separate hearings for each. However, there are limited exceptions to these rules. For example, section 1125(f) provides a limited exception for small business cases where a "separate disclosure statement is not necessary." 11 U.S.C. § 1125(f). This exception was added pursuant to BAPCPA amendments to expedite the chapter 11 process for small business debtors <u>who have less complicated cases</u>. *See In re Wheelchair Sales & Servs., Inc.*, 593 B.R. 321, 322 (Bankr. N.D. Ill. 2018) ("the expedited nature of the confirmation process . . . is a clear example of Congress' attempt to keep small business cases on short leash"). Similar to section 1125(f), Rule 3017.1(a) clearly and

6

unambiguously applies this limited exception only in small business cases. Fed. R. Bankr. R. 3017.1 ("[I]n a small business case, the court may, on application of the plan proponent or in its own initiative, conditionally approve a disclosure statement filed in accordance with Rule 3016"). Accordingly, "approval of a Chapter 11 disclosure statement is discretionary and remains the exception rather than the rule." *In re Meldrum*, 2019 Bankr. LEXIS 3427, *6 (Bankr. D. Nev. Oct. 5, 2019) (denying a renewed request for conditional approval of disclosure statement and request for a combined hearing); s*ee also In re Amster Yard Assocs.*, 214 B.R. 122, 125 (Bankr. S.D.N.Y. 1977) ("[E]ven if a court can preliminary approve a disclosure statement, it should exercise this power sparingly.")

On May 31, 2024, the Bankruptcy Courts for the Southern District of New York adopted M-634, which modifies the default rules found in Section 1125 and Rule 3016. Specifically, M-634 provides for a "common set of procedures generally to be followed by proponents of chapter 11 plans that seeking under 11 U.S.C. § 105(d)(2)(B)(vi) to combine the hearings on the proponent's requests for (x) approval of the disclosure statement for such plan and (y) confirmation of the plan." M-634, pg. 2 of 8. Absent from the entirety of M-634 is application of the contents to "mega" cases. There are specific references, however, to Prepackaged Chapter 11 Cases, Subchapter V cases, and small business cases pursuant to section 1125(f). None of these categories apply to the instant bankruptcy cases. Moreover, M-634 is merely advisory; the guidelines state, "[n]othing in these Guidelines prevents a judge of this Court from modifying these Guidelines based on the facts before the judge … ." M-634, pg. 2 of 8.

The Debtors are a large publicly traded company seeking relief pursuant to M-634. Specifically, the Debtors have approximately $3.6 billion in outstanding debt. Disclosure Statement at pg. 22 of 359. The Debtors, as a publicly traded company, have approximately

7

240,000,000 shares of voting Common Stock authorized, of which 109,523,815 are outstanding. *Id*. Moreover, as part of the Plan, it appears that the Debtors are seeking to have its Common Stock delisted. *Id*. ("[o]n the Petition Date, the New York Stock Exchange suspended the Common Stock, and began the process of having such Common Stock delisted."). The Debtors also have a robust and complicated note structure consisting of convertible notes whereby as of the Petition Date, the Debtor has $25.1 million in its 2025 Convertible Notes and $500 million in 2026 Convertible Notes outstanding. *Id*. at pg. 24 of 359. There are also Loyalty Intercompany Notes outstanding of approximately $1,127 billion. *Id*. at pg. 23 of 359. Additionally, the Debtor has outstanding Senior Secured Notes of approximately $1.11 billion as of the Petition Date. Understanding the nuances and intersection of the various notes and their balances, due dates, and how each will be impacted by the proposals contained in any plan, is going to take time to review and understand. For these reasons, M-634 contemplates situations where a plan structure is less complex, and creditor and interest holder bodies are less numerous than that of these Debtors.

Further, while the Debtors contend that the Plan is consensual and that no parties will be impaired, the Plan contains complicated third-party releases. *See generally*, Plan, Art. VIII, "Effect of Confirmation of the Plan." Releases are not a *de minimis* attribute of a plan – they are instead the loss of a right of a claimant. *See generally, Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52, 66 (2d Cir. 2008) (discussing the impact of bankruptcy releases on claimants). The Debtors further argue that use of a combined hearing does not harm creditors and equity holders, but once the Disclosure Statement is approved, even if only on an interim basis, it will be difficult to unwind or undo issues related to the solicitation procedures and adequacy of information at the combined hearing. *See, e.g.*, *Amster Yards*, 214 B.R. at 125 ("[N]ature being what it is, plan proponents will be less willing to make modifications that could

8

nullify votes they have already solicited. Further, courts may be reluctant to delay confirmation based on shortcomings that might have foreclosed approval of the disclosure statement if the hearings had not been combined.").

All of this is to say – this is a complicated and nuanced plan that is not as "easy" as the Debtors claim. The facts of these cases are just being learned – we do not yet have schedules or statements of financial affairs, and may not until after the voting deadline proposed by the Motion. We have not and will not have a full 341 Meeting to examine those documents until sometime in January, assuming that the Debtors do not seek an additional extension. When circumstances are as they exist in this case, the default requirements and rules found in the Bankruptcy Code and Bankruptcy Rules should apply in order to ensure proper notice and compliance with all requirements. Therefore, not only is there no established basis to deviate from the normal, tried, and true procedures, but this is a particularly large and complex bankruptcy case where application of a truncated schedule should be denied. "Having elected chapter 11, [the Debtors] must suffer its warts and barnacles." *Amster Yards*, 214 B.R. at 125. Accordingly, the Motion should be denied.

## RESERVATION OF RIGHTS

The Untied States Trustee reserves his rights to further object, supplement, or amend this Objection. Moreover, nothing herein shall constitute a waiver of argument with respect to the Disclosure Statement, confirmation of the Plan, or any other document, brief, or motion.

## CONCLUSION

WHEREFORE, the United States Trustee requests that the Court (1) sustain this Objection, (2) order the Debtors to re-notice this hearing under the timeframe and procedures contemplated in Federal Rule of Bankruptcy Procedure 3017(a), and (3) and grant further relief as is just and appropriate.

Dated: December 10, 2024
      New York, New York

      WILLIAM K. HARRINGTON
      UNITED STATES TRUSTEE

      /s/ *Shara Cornell*
      Shara Cornell, Esq.
      Annie Wells, Esq.
      Eric Bradford, Esq.
      Trial Attorneys
      Office of the United States Trustee
      One Bowling Green
      New York, NY 10004
      (212) 510-0500