Kaplan Kirsch LLP
1500 Broadway, Suite 1605
New York, NY 10036
Steven L. Osit
Eric T. Smith
Adam E. Gerchick

Counsel to the Airport Consortium

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| SPIRIT AIRLINES, INC. et al, | Case No. 24-11988 (SHL) |
| Debtors. | Related to Docket Nos. 7, 13 & 22 |

**LIMITED OBJECTION OF THE AIRPORT CONSORTIUM TO (1) DEBTOR'S MOTION AUTHORIZING POST-PETITION FINANCING (#22)[1], (2) DEBTOR'S MOTION FOR AUTHORIZATION TO MAINTAIN EXISTING CASH MANAGEMENT SYSTEM & BANK ACCOUNTS (#7)[2], AND (3) DEBTOR'S MOTION TO AUTHORIZE PAYMENT OF CERTAIN TAXES, GOVERNMENTAL ASSESSMENTS AND FEES (#13)[3]**

---

[1] *Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552, (I) Authorizing the Debtors, Upon Entry of the Final Order, to Obtain Senior Secured Superpriority Post-Petition Financing, (II) Authorizing the Debtors' Use of Any Cash Collateral, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [ECF No. 22] (hereinafter the "DIP Financing Motion").

[2] *Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing (A) the Debtors to Maintain Their Existing Cash Management System, Bank Accounts, and Business Forms, (B) the Debtors to Open and Close Bank Accounts, and (C) Financial Institutions to Administer the Bank Accounts and Honor and Process Related Checks and Transfers, (II) Waiving Deposit and Investment Requirements, and (III) Allowing Intercompany Transactions and Affording Administrative Expense Priority to Post-Petition Intercompany Claims* [Doc. 7] (hereinafter the "Bank Account Motion").

[3] *Motion of the Debtor for Entry of Interim and Final Orders Authorizing (I) the Debtors to Pay Certain Prepetition Taxes, Governmental Assessments, and Fees and (II) Financial Institutions to Honor and Process Related Checks and Transfers* [ECF No. 13] (hereinafter the "Tax Payment Motion").

AND NOW COMES the Airport Consortium[4], by and through its undersigned counsel, by way of this limited objection (the "Limited Objection") to each of the three above-stated motions (together, the "Motions"), and respectfully states as follows:

### BACKGROUND

1. The "Airport Consortium" is a group of airports that have agreed to jointly file this Limited Objection. This Limited Objection is hereby filed on behalf of each airport within the Airport Consortium individually. The Airport Consortium is currently comprised of the following parties, each of which owns and operates the airport listed below beside such party:

- The City of Chicago, Illinois – Chicago O'Hare International Airport;
- Clark County, Nevada – Harry Reid (Las Vegas) International Airport;
- The Hillsborough County Aviation Authority – Tampa International Airport;
- The City of Kansas City, Missouri – Kansas City International Airport
- The Allegheny County Airport Authority – Pittsburgh International Airport;
- The San Diego County Regional Airport Authority – San Diego International Airport;
- The Norfolk Airport Authority – Norfolk International Airport;
- The Wayne County Airport Authority – Detroit Metropolitan Wayne County Airport; and
- The City of Phoenix, Arizona – Phoenix Sky Harbor International Airport.[5]

2. On November 18, 2024 (the "Petition Date"), the Debtor commenced a voluntary bankruptcy case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

---

[4] Defined in paragraph 1 of this Limited Objection.

[5] Other airport proprietors may join the Airport Consortium prior to the hearing date set for the Motions. In that event, counsel for the Airport Consortium will file a notice indicating that such additional airport proprietors are members of the Airport Consortium and join in this Limited Objection.

2

3. On November 18, 2024, as part of its "first day" filings, debtor Spirit Airlines, Inc. ("Spirit") filed a Motion for Entry of Interim and Final Orders Authorizing (I) the Debtors to Pay Certain Prepetition Taxes, Governmental Assessments, and Fees and (II) Financial Institutions to Honor and Process Related Checks and Transfers [ECF No. 13] (the "Tax Payment Motion").

4. The Tax Payment Motion requests that this Court authorize, but not obligate, the Debtors to pay certain pre- and post-petition amounts related to several of the Debtors' obligations owed to owner/operators of airports (characterized in the Tax Payment Motion, together with various other entities, as "Taxing Authorities").

5. On November 18, 2024, as part of its "first day filing," the Debtors filed a Motion for Entry of Interim and Final Orders (I) Authorizing (A) the Debtors to Maintain Their Existing Cash Management System, Bank Accounts, and Business Forms, (B) the Debtors to Open and Close Bank Accounts, and (C) Financial Institutions to Administer the Bank Accounts and Honor and Process Related Checks and Transfers, (II) Waiving Deposit and Investment Requirements, and (III) Allowing Intercompany Transactions and Affording Administrative Expense Priority to Post-Petition Intercompany Claims [ECF No. 7] (the "Bank Account Motion").

6. The Bank Account Motion requests that this Court authorize the Debtors to continue to employ certain financial procedures, policies, practices, and accounts as they existed before the Petition Date.

7. On November 18, 2024, as part of its "first day filings," the Debtors filed a Motion for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552, (I) Authorizing the Debtors, Upon Entry of the Final Order, to Obtain Senior Secured Superpriority Post-Petition Financing, (II) Authorizing the Debtors' Use of Any Cash

3

Collateral, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [ECF No. 22] (the "DIP Financing Motion").

8. The DIP Financing Motion seeks this Court's permission to utilize the Debtors' funds and designate the funds that are subject to the DIP lenders security interests.

9. The Airport Consortium requests that the final orders with respect to the Motions be modified from the respective interim orders to fully protect the interests of the members of the Airport Consortium.

## LIMITED OBJECTION

10. Generally, the members of the Airport Consortium do not object to the central purposes of the Motions.

11. Indeed, the members of the Airport Consortium fully support the Debtors making continued payments to airports, bringing their accounts current, and maintaining the required security for performance that existed upon the Petition Date and is required to be maintained going forward.

12. The Airport Consortium also agrees that the failure to grant the Debtors such general authority could unnecessarily complicate relationships between the Debtors and the entities that own/operate airports at which Sprit operate.

13. However, several statements within the Motions raise concern for the Airport Consortium. Therefore, in an abundance of caution, and to mitigate the risk of future disputes between the Debtors and the members of the Airport Consortium, the Airport Consortium believes that it is in the interests of all parties, including the Debtors, to file the instant Limited Objection.

14. The Airport Consortium is concerned that the Debtors have failed to clearly define Passenger Facility Charges ("PFCs"), creating potential ambiguity as to which charges fall under

4

that term and may therefore be paid pursuant to the related Interim Order Authorizing (I) the Debtor to Pay Certain Prepetition Taxes, Government Assessments, and Fees and (II) Financial Institutions to Honor and Process Related Checks and Transfers [ECF No. 58] (the "Interim Tax Payment Order").

15. Further, the Airport Consortium is concerned that the Motions do not make it sufficiently clear that PFCs and similar payments made to airport operators are funds held in trust for the benefit of the airport operators, and that PFCs are not property of the Debtors. In fact, PFCs are established by airport operators, including the members of the Airport Consortium, pursuant to federal law, are paid by the Debtors' passengers and collected by the Debtors for the sole benefit of the Airport Consortium's members and other airport operators, and are expressly recognized by federal law as the property of the respective airport operator for which the Debtors collected the PFC.

16. As detailed below, the Airport Consortium believes that modest changes from the interim orders with respect to the Motions can address its concerns without altering the substance of the relief that the Debtors seek.

## PFCs Are Not Property of the Debtors' Estates

17. Passenger Facility Charges are statutorily defined fees that an airport operator may, with federal approval, establish and charge to the airline passengers who use the operator's airport(s) to fund certain airport capital and operating costs. 49 U.S.C. § 40117(b), (c). Crucially, while air carriers are required to collect federally authorized PFCs on behalf of airport operators, 14 C.F.R. §§ 158.45, 158.47, the collecting air carriers have neither a legal nor a beneficial interest in the PFCs and collect them solely in trust for the airport operators, 49 U.S.C. § 40117(g)(4).

5

18. Congress established the PFC program to enable public agencies that operate public airports to levy certain charges on travel through those airports. See, Notice of Proposed Rulemaking, *Update and Clarification of the Passenger Facility Charge Regulations*, 88 Fed. Reg. 66,319, 66,320 (Sept. 27, 2023). The PFC program is authorized by 49 U.S.C. § 40117 (the "PFC Statute").

19. The PFC Statute allows a public agency to charge each eligible airport passenger at that agency's commercial airport(s) up to $4.50. 49 U.S.C. § 40117(b)(1). Airport operators may use these charges to fund federally-approved projects that enhance safety, security, or capacity; reduce noise; or increase air-carrier competition. *Id*. § 40117(d)(2).

20. The Federal Aviation Administration has promulgated regulations to govern the PFC program. Those regulations govern, *inter alia*, how PFCs are to be collected, accounted for, and remitted to airport operators by the airlines that collect PFCs on each airport operator's behalf. Those regulations are found at 14 C.F.R. Part 158 (the "PFC Regulations").

21. While authorized public airport operators, including every member of the Airport Consortium, levy PFCs, airlines collect the PFCs on the airport operators' behalf. Every month, each airline that collects PFCs must remit such funds to the appropriate airport operators. 14 C.F.R. § 158.51.

22. Both the PFC Statute and the PFC Regulations make it clear that PFC funds are *not* the property of any airline, but are instead held in trust for each airport operator that levied the PFC. Indeed, 49 U.S.C. § 40117(g)(4) expressly states, in full:

> Passenger facility revenues that are held by an air carrier or an agent of the carrier after collection of a passenger facility charge constitute a trust fund that is held by the air carrier or agent for the beneficial interest of the eligible agency imposing the charge. Such carrier or agent holds neither legal nor equitable interest in the passenger facility revenues except for any handling fee or retention

6

>   of interest collected on unremitted proceeds as may be allowed by the Secretary [of Transportation].

23. Likewise, 14 C.F.R. § 158.49(b) states, in relevant part:

>   PFC revenues held by an air carrier or an agent of the air carrier after collection are held in trust for the beneficial interest of the public agency imposing the PFC. Such air carrier or agent holds neither legal nor equitable interest in the PFC revenues except for any handling fee or interest collected on unremitted proceeds as authorized in [14 C.F.R.] § 158.53.

24. Further, upon filing for protection under the Bankruptcy Code, an airline is forbidden from comingling PFCs with its other cash. Rather, the PFC Regulations require that such a "covered air carrier" open a new account and separately account for PFCs following the Petition Date, sweep previously collected PFCs into such account, and thereafter deposit all PFCs into such account. 14 C.F.R. § 158.49(c)(1).

**The Tax Payment Motion and Related Proposed Order Do Not Specifically Authorize the Continued Payment of PFCs or Specifically Designate PFCs as Held in Trust for the Airport Operators**

25. The Tax Payment Motion makes a general reference to "passenger facility charges" paid to "Taxing Authorities" "for use of common areas in airports (*e.g.*, terminals, boarding facilities)." Tax Payment Motion ¶ 13. But it is not clear whether that refers to PFCs as statutorily defined. *See* 49 U.S.C. § 40117(a)(5) (defining "passenger facility charge" as "a charge imposed under this section [40117]").

26. Rather, the reference to "passenger facility charges" in paragraph 13 of the Tax Payment Motion is followed by an imprecise definition and does not reference either the PFC Statute or the PFC Regulations.

27. The Debtors, indirectly, acknowledge that PFCs are not property of the Debtors' estates. *See* Tax Payment Motion ¶ 16, *citing DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432,

7

435 (2d Cir. 1985) (certain taxes held to be "trust fund" taxes), *Fran Corp. v. United States*, 164 F.3d 814, 817 (2d Cir. 1999) (certain taxes were "trust fund" taxes), and *In re First Cent. Fin. Corp.*, 377 F.3d 209, 217 (2d Cir. 2004) (funds held in constructive trust not property of the estate). Again, however, the Tax Payment Motion does not directly reference either the PFC Statute or the PFC Regulations, and paragraph 16 of such motion does not make clear whether PFCs are among the "certain Taxes and Fees" that "are property of the relevant Taxing Authorities and are not property of the Debtors' estates." *See id*.

28. The Airport Consortium generally supports the relief requested by the Debtors. However, given the vagueness of the Tax Payment Motion and related proposed order, the Airport Consortium believes that the Court would benefit all interested parties by clarifying in its final order in response to the Tax Payment Motion that the Debtors' estates hold neither legal nor equitable interest in any PFCs, as defined by the PFC Statute and the PFC Regulations, but rather that the Debtors merely hold such PFCs funds in trust for the airport operators on whose behalf the Debtors collect such PFCs pursuant to the PFC Statute and the PFC Regulations.

### The Bank Account Motion and Related Proposed Order Do Not Specifically Direct the Debtors to Create and Maintain a PFC Account

29. The Bank Account Motion requests that the Court allow the Debtors to maintain their existing cash management system and also requests that the Debtors have the authority to open new accounts. Bank Account Motion ¶ 1 (requesting authority to "open and close Bank Accounts post-petition").

30. It appears that the Debtors are sweeping most funds that they collect into one main account (the "Main Concentration Account"). *Id*. ¶ 10(a). Given the representations made in the Bank Account Motion, it appears likely that the Debtors are depositing the PFCs collected from passengers into this account. *See id*. (stating that the Main Concentration Account "receives all

8

company revenues" less certain credit-card revenues and "serves as the hub of the Debtors' cash management system").

31. As indicated above, after the Petition Date, the Debtors are required to create and maintain a separate account for PFCs collected on airports' behalf. 14 C.F.R. § 158.49(c)(1) ("A covered air carrier must segregate PFC revenue in a designated separate PFC account.").

32. Nowhere in the Bank Account Motion do the Debtors reference the existence of a PFC account that is required pursuant to 14 C.F.R. § 158.49(c)(1), nor do the Debtors specifically request approval to open and maintain such an account.

33. The Debtors' lack of acknowledgement of the requirement to segregate PFC funds concerns the Airport Consortium. Given the pledge of cash collateral to the DIP Lenders (as "DIP Lenders" is defined in the DIP Term Sheet), absent the establishment, maintenance, and proper funding of a segregated PFC account in accordance with 14 C.F.R. § 158.49(c)(1), substantial confusion could arise as to the nature of PFC revenues, their status as trust funds, and their inclusion in the pledged cash collateral.

34. Accordingly, in order to avoid any future disputes, the Airport Consortium asks the Court to modify the proposed order related to the Bank Account Motion to specifically provide that the Debtors must open a PFC account, authorize the Debtors to do so, and incorporate such provisions into the final DIP Financing Order.

### The DIP Financing Motion and Related Proposed Order Do Not Specifically Exclude PFCs

35. The DIP Financing Motion requests approval of post-petition financing and for the lenders providing such credit facility to receive a super-priority lien on "cash collateral." See DIP Financing Motion at ¶ 1.

9

36. Nowhere within the DIP Financing Motion and related proposed order are PFCs mentioned, let alone specifically carved out from the DIP Lenders' security interests in cash collateral.

37. The Airport Consortium acknowledges that the defined term "Excluded Assets" could be construed as such a carve out. *See* DIP Commitment Letter, Annex A, at 5. However, the vague, blanket terminology of that defined term should be made more specific and expressly reference PFCs in order to mitigate the risk of future disputes over PFCs' rightful exclusion from the DIP Lenders' cash collateral.

**PROPOSED RELIEF**

38. As indicated above, the Airport Consortium is generally supportive of the Debtor's efforts to reorganize generally and the relief sought in the Motions. However, given the magnitude of the PFCs collected on behalf of Airport Consortium members and the risk of future disputes should a default occur that implicates cash collateral, the Airport Consortium hereby requests that the three (3) proposed final orders with respect to the Motions be modified so as to (a) specifically reference PFCs (via reference to both the PFC Statute and the PFC regulations), (b) authorize and *direct* the Debtors to immediately establish, maintain, and fund a segregated PFC account, (c) direct the Debtors to create and provide to the Airport Consortium members monthly reports showing deposits and payments into and out of such PFC account, (d) authorize the continued, uninterrupted payment of airport fees and charges (including, but not limited, to PFCs) to the members of the Airport Consortium, and (e) specifically exclude PFCs from the

10

definition of "Cash Collateral"[6] and their inclusion in the security interests to be taken by the PFC Lenders.

39.  The undersigned counsel welcomes further discussions with the Debtor to attempt to resolve this Limited Objection in advance of the pending hearing presently scheduled for December 17, 2024, at 11:00 a.m.

Respectfully submitted,

Dated: December 10, 2024

/s/ Steven L. Osit
Steven L. Osit
sosit@kaplankirsch.com
KAPLAN KIRSCH LLP
1500 Broadway, Suite 1605
New York, NY 10036
Telephone: (646) 883-5110

Eric T. Smith (admission *pro hac vice* pending)
esmith@kaplankirsch.com
Adam E. Gerchick (admission *pro hac vice* pending)
agerchick@kaplankirsch.com
KAPLAN KIRSCH LLP
1634 I (Eye) Street NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 955-5600

*Counsel to the Airport Consortium*

---

[6] As defined in the *Interim Order (I) Authorizing the Debtor to Utilize Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [ECF No. 80], at 5.

11

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| SPIRIT AIRLINES, INC., et al. | Case No. 24-11988 (SHL) |
| Debtors | Related to Docket Nos. 7, 13 & 22 |

ORDER