WILLIAM K. HARRINGTON  
United States Trustee for Region 2  
One Bowling Green  
New York, New York 10004  
Telephone: (212) 510-0500  
By: Shara Cornell  
   Trial Attorney

Hearing Date: Dec. 17, 2024  
Hearing Time: 11:00 a.m.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
: 
In re : Chapter 11
: 
  SPIRIT AIRLINES, INC., et al., : Case No. 24-11988-SHL
: 
Debtors.[1] : (Jointly administered)
: 
------------------------------------------------------- x

**LIMITED OBJECTION OF THE UNITED STATES TRUSTEE TO APPLICATION TO RETAIN DAVIS POLK & WARDWELL AS COUNSEL TO THE DEBTORS**

TO: THE HONORABLE SEAN H. LANE,  
      UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), by and through his undersigned counsel, hereby submits this limited objection (the "**Objection**") to the retention application of Davis Polk & Wardwell ("**DPW**" and the "**DPW Application**") (Dkt. No. 147) as primary counsel to Spirit Airlines, Inc., *et al.* (the "**Debtors**"). In support of this Objection, the United States Trustee respectfully represents and alleges as follows:

**I.    INTRODUCTION**

The Debtors seek to retain DPW as primary counsel. However, the DPW Application

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Spirit Airlines, Inc. (7023), Spirit Finance Cayman 1, Ltd. (7020), Spirit Finance Cayman 2, Ltd. (7362), Spirit IP Cayman Ltd. (4732), and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

1

cannot be approved until DPW provides supplemental disclosures regarding potential and current conflicts. Based on communications with DPW, it appears that there may be additional case connections that require more detailed disclosures than are currently provided in the DPW Application and accompanying Declaration of Marshall Huebner (the "**Huebner Declaration**"). Accordingly, the United States Trustee requests that the DPW Application be denied without prejudice with an opportunity to provide further disclosures.

## II.    FACTS

**A.    General Background**

1. On November 18, 2024 (the "**Petition Date**"), Debtor Spirit Airlines, Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On November 25, 2024, Spirit Airlines, Inc.'s subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b), as ordered by the Court (ECF Dkt. No. 121).

4. On November 29, 2024, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "**UCC**") (Dkt. No. 133). No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.

**B.    The Relevant Retention Applications**

*i.    The DPW Application*

5. The Debtors seek to retain DPW as their lead counsel.

6. The DPW Application does not identify any specific tasks for which conflicts counsel may be needed.

7. The DPW Application lists approximately 50 client matches (the "**DPW Client List**") with Debtor related entities on its "Client Match List for Past Two Years." *See* Schedule 2 to Huebner Declaration. With respect to the individual clients listed on the DPW Client list, DPW asserts that, "None of the above relationships constitute an actual conflict, although such relationships may be "connections" within the meaning of Bankruptcy Rule 2014 and, therefore, are disclosed." Huebner Declaration at ¶ 8.

8. DPW further states that "Davis Polk does not and will not represent any of the entities listed on Schedule 2 in matters related to the Chapter 11 Cases." *Id*.

9. Five of the clients identified on the DPW list were recognized as having more than one percent of DPW's revenues during the 12 months ending on October 31, 2024. *Id*. at 8(b). Specifically, DPW represents "Barclays Capital Inc., Citigroup Inc., Comcast Corporation, JPMorgan Chase & Co., and Morgan Stanley & Co." (together, the "**Five Parties**") in various matters. *Id*. at ¶ 8(c).[2] In connection with the Five Parties, DPW stated that "[it] has never represented, and will not represent, the 1% Potential Parties In Interest in any matters related to the Debtors or the Chapter 11 Cases. Davis Polk has considered the positions of the 1% Potential Parties In Interest in the Chapter 11 Cases and has concluded that Davis Polk's representation of the Debtors does not create any conflict of interest with the 1% Potential Parties In Interest." *Id*.

10. On December 3, 2024 the Debtors filed an application (the "**MNT Application**") to employ Morris Nichols Arsht & Tunnell LLP ("**MNT**") as conflict counsel. ECF Dkt. No 151.

---

[2] No further description is provided regarding DPW's engagement with the Five Parties.

3

11. The MNT Application states that "[i]n the event that the Debtors are pursuing a position that would cause a connection with a client of Davis Polk to mature into or become a potential conflict of interest (each, a "Conflict Matter"), Morris Nichols will become involved in such matter so that the Morris Nichols can advise the Debtors in the Conflict Matter. If the Conflict Matter develops into an actual conflict, Morris Nichols will take over the matter." MNT Application at ¶ 10. No Conflict Matter is identified in the MNT Application.

12. MNT seeks retention *nunc pro tunc* to the Petition Date. *Id*. at ¶ 1.

13. Prior to the Petition Date, MNT received an advance payment establishing a retainer of $150,000. *Id*. at ¶ 15.

### III.    DISCUSSION

#### A.    <u>Governing Standards</u>

Section 327 of the Bankruptcy Code governs the employment of professional persons and provides, in part:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, [. . .] or other professional persons, **that do not hold or represent an interest adverse to the estate, and that are disinterested persons**, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added); *In re Worldcom*, 311 B.R. 151, 163 (Bankr. S.D.N.Y. 2004) (a professional "must not hold an interest adverse to the bankruptcy estate; (2) must not represent an interest adverse to the estate; and (3) must be disinterested."). Pursuant to 11 U.S.C. § 101(14), a person is disinterested if he or she:

> does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

4

11 U.S.C. § 101(14); *In re Angelika Films 57th Inc.*, 227 B.R. 29, 39 (Bankr. S.D.N.Y. 1998) ("What is clear is that undivided loyalty is central to disinterestedness").

"The 'materially adverse' standard incorporated in the disinterestedness test and the 'interest adverse to the estate' language in section 327(a) overlap . . . and form a single test to judge conflicts of interest." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (citations omitted); *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994) (quoting *In re Martin*, 817 F.2d 175, 181 (1st Cir. 1987)) ("[T]he twin requirements of disinterestedness and lack of adversity telescope into a single hallmark."). Section 327(a)'s prohibition of "[a]n interest adverse to the estate" has been construed strictly, and operates as a 'catch-all clause,' where any doubt will result in disqualification. *In re Vebeliunas*, 231 B.R. 181, 191 n.10, 191–92 (Bankr. S.D.N.Y. 1999); *see also In re Angelika Films 57th Inc.*, 227 B.R. at 39.

While the term "adverse interest" is not defined in the Bankruptcy Code, the Second Circuit has adopted the following definition:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999); *see also In re Enron*, No. 01-16034, 2002 WL 32034346 at *1, *8 (Bankr. S.D.N.Y. May 23, 2002) ("[I]f it is plausible that the representation of another interest may cause the professional to act any differently than they would without that other representation, then that professional would have a conflict and an interest adverse to the estate warranting disqualification."). The decision whether an adverse interest exists is determined by the court on a case-by-case basis. *See In re AroChem Corp.*, 176 F.3d at 623; *In re Caldor, Inc. NY*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996).

A disabling adverse interest arises where a professional has "a meaningful incentive, or the

5

perception of one, to act contrary to the interests of the estates." *In re Granite Partners*, 219 B.R. at 36; *In re Vebeliunas*, 231 B.R. at 191 ("To be disinterested is 'to prevent even the appearance of a conflict **irrespective of the integrity** of the person or firm under consideration.'") (emphasis added). A conflict related to a party that is central to a debtor's reorganization may be disqualifying even where the proposed counsel seeks to utilize "conflicts counsel." *See In re Project Orange Assocs., LLC*, 431 B.R. 363, 379 (Bankr. S.D.N.Y. 2010).

B. **DPW Needs to Provide More Detailed Disclosures**

Bankruptcy Rule 2014(a) directs that an application for the retention of a professional under section 327 of the Bankruptcy Code "shall state the specific facts showing the necessity for the employment…" The DPW Application fails to provide details regarding its case connections and conflicts. Specifically, upon information and belief, MNT, proposed conflicts counsel, is already working on matters that DPW has deemed a conflict for DPW. However, these conflicts have not been detailed in either the DPW Application, the Heubner Declaration, or the MNT Application. DPW cannot have it both ways. Either there is a conflict that rises to the level that conflicts counsel must be retained *nunc pro tunc* to the Petition Date (in which case it must be disclosed) or, alternatively, no conflict exists and conflicts counsel need not be retained. All facts that may have any bearing on the disinterestedness of a professional must be disclosed. *See In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr.S.D.N.Y.1994) ("Consistent with the duty placed on the professional, it is the responsibility of the professional, not of the court, to make sure that all relevant connections have been brought to light."); *see also In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) ("The existence of an arguable conflict must be disclosed if only to be explained away."). Accordingly, any connection of DPW must be adequately disclosed and described in order for the Court and interested parties to evaluate the propriety of DPW's retention

6

in these cases.

## IV.  CONCLUSION

For the reasons set forth in this Objection, the United States Trustee respectfully requests that the Court deny the DPW Application without prejudice to providing additional disclosures and grant such other relief as is just and proper.

Dated: New York, New York
December 12, 2024

                WILLIAM K. HARRINGTON
                UNITED STATES TRUSTEE

*By:*   */s/ Shara Cornell*
      Shara Cornell, Esq.
      Annie Wells, Esq.
      Eric Bradford, Esq.
      Trial Attorneys
      One Bowling Green
      New York, New York 10004