| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: Dec. 17, 2024<br>Hearing Time: 11:00 a.m. |

```
----------------------------------------------------------x
                                                          :
In re                                                     :    Chapter 11
                                                          :
   SPIRIT AIRLINES, INC., et al.,                         :    Case No. 24-11988-SHL
                                                          :
                                          Debtors.¹       :    (Jointly administered)
                                                          :
----------------------------------------------------------x
```

**OBJECTION OF THE UNITED STATES TRUSTEE TO RETENTION OF
MORRIS, NICHOLS, ARSHT & TUNNELL LLP CONFLICTS COUNSEL**

TO:   THE HONORABLE SEAN H. LANE,
      UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), by and through his undersigned counsel, hereby submits this objection (the "**Objection**") to the retention application of Morris, Nichols, Arsht & Tunnell LLP ("**MNT**" and the "**MNT Application**") (Dkt. No. 151) as conflicts counsel to Spirit Airlines, Inc., *et al*. (the "**Debtors**"). In support of this Objection, the United States Trustee respectfully represents and alleges as follows:

### I.    INTRODUCTION

The Debtors seek to retain MNT as conflicts counsel. In other words, MNT will act as Debtors' counsel on discrete issues where Debtors' proposed "primary" counsel, Davis Polk & Wardwell ("**DPW**"), has a conflict and therefore must be excused from representation on that specific issue. However, neither the MNT Application nor the retention application proposed by DPW (the "**DPW Application**"), identify any conflicts requiring conflicts counsel. Specifically,

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Spirit Airlines, Inc. (7023), Spirit Finance Cayman 1, Ltd. (7020), Spirit Finance Cayman 2, Ltd. (7362), Spirit IP Cayman Ltd. (4732), and Spirit Loyalty Cayman Ltd. (4752).  The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

1

both MNT and DPW have each identified limited clients that are current creditors of the Debtors' estates. However, despite these connections, neither the MNT Application nor the DPW Application (Dkt. No. 147) identify any specific conflict for which the retention of MNT is necessary.

If there is no alleged specific conflict for which MNT needs to be retained, then there is no reason for the Debtors to incur significant costs in retaining MNT as "shadow" counsel. On the other hand, if there is a current conflict, such that retaining a second firm and incurring additional and significant expense is necessary and warranted, then the conflict should be identified by DPW and MNT so that the Court and interested parties can properly evaluate whether MNT should be retained under Section 327(a) of the Bankruptcy Code.[2] Accordingly, the MNT Application should be denied.

## II.    FACTS

**A.    General Background**

1. On November 18, 2024 (the "**Petition Date**"), Debtor Spirit Airlines, Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On November 25, 2024, Spirit Airlines, Inc.'s subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b), as ordered by the Court (ECF Dkt. No. 121).

---

[2] Parties will also need to know if, in the event of a conflict, whether DPW's conflict is such that it cannot meet the disinterested and adverse interests requirements of section 327(a).

2

4.      On November 29, 2024, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "**UCC**") (Dkt. No. 133).

**B.      The Relevant Retention Applications**

*i.     The DPW Application*

5.      The Debtors seek to retain DPW as their primary counsel. DPW does not identify any specific tasks for which conflicts counsel is needed. The DPW Application lists approximately 50 client matches (the "**DPW Client List**") with Debtor related entities on its "Client Match List for Past Two Years." *See* Schedule 2 to Declaration of Marshall Heubner ("**Huebner Declaration**").

6.      On information and belief, it is possible that MNT is working on matters that have not yet been disclosed by DPW. If true, the United States Trustee reserves his rights to object once such matters, if any, have been disclosed to this Court.

7.      With respect to the individual clients listed on the DPW Client list, DPW asserts that, "None of the above relationships constitute an actual conflict, although such relationships may be "connections" within the meaning of Bankruptcy Rule 2014 and, therefore, are disclosed." Huebner Declaration at ¶ 8.

8.      The Huebner Declaration further states that "Davis Polk does not and will not represent any of the entities listed on Schedule 2 in matters related to the Chapter 11 Cases." *Id*.

9.      Five of the clients identified on the DPW list were recognized as having more than one percent of DPW's revenues during the 12 months ending on October 31, 2024. *Id*. at 8(b). Specifically, DPW represents "Barclays Capital Inc., Citigroup Inc., Comcast Corporation,

3

JPMorgan Chase & Co., and Morgan Stanley & Co." (together, the "**Five Parties**") in various matters. *Id*. at ¶ 8(c).[3]

10.    In connection with the Five Parties, DPW states that "[it] has never represented, and will not represent, the 1% Potential Parties In Interest in any matters related to the Debtors or the Chapter 11 Cases. Davis Polk has considered the positions of the 1% Potential Parties In Interest in the Chapter 11 Cases and has concluded that Davis Polk's representation of the Debtors does not create any conflict of interest with the 1% Potential Parties In Interest." *Id*.

### ii. *The MNT Application*

11.    The MNT Application was filed on December 3, 2024. Dkt. No. 151.

12.    The MNT Application states that MNT will perform the following services:

(a) perform all necessary services as the Debtors' conflicts counsel, including, without limitation, providing the Debtors with advice, representing the Debtors, and preparing necessary documents on behalf of the Debtors in the areas of restructuring and bankruptcy;

(b) counsel the Debtors with regard to their rights and obligations as debtors in possession as it relates to any Conflict Matters or other matters delegated by the Debtors and Davis Polk;

(c) coordinate with the Debtors' other professionals in representing the Debtors as necessary in connection with these cases; and

(d) perform all other necessary and related legal services.

*Id*. at ¶ 11.

13.    The MNT Application states that "[i]n the event that the Debtors are pursuing a position that would cause a connection with a client of Davis Polk to mature into or become a potential conflict of interest (each, a "Conflict Matter"), Morris Nichols will become involved in such matter so that the Morris Nichols can advise the Debtors in the Conflict Matter. If the Conflict

---

[3] No further description is provided regarding DPW's engagement with the Five Parties.

4

Matter develops into an actual conflict, Morris Nichols will take over the matter." MNT Application at ¶ 10. No Conflict Matter is identified in the MNT Application.

14. MNT also provided a list of present and former clients, annexed as Schedules 2 and 3 (the "**MNT Client List**"). In connection with this list, MNT stated that it has approximately 20 former clients (Schedule 2) and approximately 30 current clients (Schedule 3).

15. Included on the MNT Client list are:

- Barclays Capital Inc.
- JPMorgan Chase & Co., and
- Morgan Stanley & Co.

*Id*. These three identified current clients on the MNT Client List are three of DPW's Five Clients.

16. MNT seeks retention *nunc pro tunc* to the Petition Date. *Id*. at ¶ 1.

17. Prior to the Petition Date, MNT received an advance payment establishing a retainer of $150,000. *Id*. at ¶ 15.

### III.    DISCUSSION

#### A.    Governing Standards

Section 327 of the Bankruptcy Code governs the employment of professional persons and provides, in part:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, [. . .] or other professional persons, **that do not hold or represent an interest adverse to the estate, and that are disinterested persons**, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).

Thus a professional

(1) must not hold an interest adverse to the bankruptcy estate; (2) must not represent an interest adverse to the estate; and (3) must be disinterested.

5

*In re Worldcom*, 311 B.R. 151, 163 (Bankr. S.D.N.Y. 2004). Pursuant to 11 U.S.C. § 101(14), a person is disinterested if he or she:

> does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). The disinterestedness standard under Section 327(a) is designed to guarantee "that the professionals' service presents no conflict of interest." *In re Vouzianas*, 259 F.3d 103, 107 (2d Cir. 2001); *see also In re Vebeliunas*, 231 B.R. 181, 191 (Bankr. S.D.N.Y. 1999) (even the appearance of a conflict is to be avoided). "What is clear is that undivided loyalty is central to disinterestedness." *In re Angelika Films 57th Inc.*, 227 B.R. 29, 39 (Bankr. S.D.N.Y. 1998).

"The 'materially adverse' standard incorporated in the disinterestedness test and the 'interest adverse to the estate' language in section 327(a) overlap . . . and form a single test to judge conflicts of interest." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (citations omitted); *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. Dec. 15, 1994) (quoting *In re Martin*, 817 F.2d 175, 181 (1st Cir.1987)) ("[T]he twin requirements of disinterestedness and lack of adversity telescope into a single hallmark."); *see also Alix v. McKinsey & Co.*, 2023 U.S. Dist. LEXIS 145872, *5 (Bankr. S.D.N.Y. Aug. 18, 2023).

Section 327(a)'s prohibition of "[a]n interest adverse to the estate" has been construed strictly, and operates as a 'catch-all clause,' *In re Vebeliunas*, 231 B.R. at 191 n.10, 191–92, where any doubt will result in disqualification. *See In re Angelika Films 57th Inc.*, 227 B.R. at 39; *see also In re Tribeca Mkt.*, LLC, 516 B.R. 254, 278 (Bankr. S.D.N.Y. 2014).

While the term "adverse interest" is not defined in the Bankruptcy Code, the Second Circuit has adopted the following definition:

(1) to possess or assert any economic interest that would tend to lessen the value of the

bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999); *see also In re Enron*, No. 01-16034, 2002 WL 32034346 at *1, *8 (Bankr. S.D.N.Y. May 23, 2002) ("Said another way, if it is plausible that the representation of another interest may cause the professional to act any differently than they would without that other representation, then that professional would have a conflict and an interest adverse to the estate warranting disqualification."). The decision whether an adverse interest exists is determined by the court on a case-by-case basis. *See In re AroChem Corp.*, 176 F.3d at 623; *In re Caldor, Inc. NY*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996).

A disabling adverse interest arises where a professional has "a meaningful incentive, **or the perception of one**, to act contrary to the interests of the estates." *In re Granite Partners*, 219 B.R. at 36 (emphasis added); *see also In re Leslie Fay Companies, Inc.*, 175 B.R. at 534 (debtor's counsel investigating a client "had a perceptible economic incentive not to pursue the possibility of claims . . . with the same vigor and intensity it might have otherwise applied.). "To be disinterested is 'to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration.'" *In re Vebeliunas*, 231 B.R. at 191. A conflict related to a party that is central to a debtor's reorganization may be disqualifying even where the proposed counsel seeks to utilize "conflicts counsel." *See In re Project Orange Assocs., LLC*, 431 B.R. 363, 379 (Bankr. S.D.N.Y. 2010).

Section 327(c) of the Code provides that a professional is not disqualified from employment by the debtor in possession solely because of the professional's representation of a creditor. Section 327(c) provides in full:

7

> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

Thus, section 327(c) does not eliminate the basic requirements of section 327(a) that the professional be disinterested and not hold or represent an interest adverse to the estate. By the same token, section 327(c) expresses the recognition that a prospective professional for a trustee or debtor in possession may have represented, or even continue to represent, one or more creditors unless there is an actual conflict of interest. While not defined in the Code, an actual conflict of interest has been interpreted to mean "an active competition between two interests, in which one interest can only be served at the expense of the other." *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002).

### B.    The Failure to Explain the Need for Conflicts Counsel

Bankruptcy Rule 2014(a) directs that an application for the retention of a professional under section 327 of the Bankruptcy Code "shall state the specific facts showing the necessity for the employment…" The MNT Application and DPW Application both fail to provide specific facts showing why it is necessary for MNT to be retained other than a vague representation that there *may* be conflicts *in the future* for which MNT would need to represent the Debtors in lieu of DPW.[4] The vague and general statements in the MNT Application do not meet the requirements of Bankruptcy Rule 2014(a).

MNT and DPW have represented that they have made fulsome disclosures of their respective connections to the creditors and other parties in these cases. Despite identifying the names of its clients with connections to these Debtors, however, it is almost impossible for a reader

---

[44] As stated *supra*, based on communications with counsel, there may currently be undisclosed current conflicts.

to discern which of those connections DPW and the Debtors deem significant enough to rise to the level of a conflict that requires another firm to handle. If there are specific matters for which MNT must be retained, those matters should be set forth with clarity. If there are no matters for which MNT needs to be retained, the MNT Retention should be denied with leave to refile when specific matters require coverage. *See In re Worldcom, Inc.*, 311 B.R. at 164 ("the professional must disclose all facts that bear on disinterestedness and cannot usurp the court's functions by selectively incorporating materials the professional deems important."). There is no concept of a "shadow" counsel in the Bankruptcy Code and there is no benefit to the Debtors' estate to retain professionals who have no present tasks to perform, particularly where they are already represented by able counsel.

Assuming *arguendo* that there is a specific matter for which a second law firm needs to be now, additional disclosures are necessary. It is well known that "[a]ll facts that may have any bearing on the disinterestedness of a professional must be disclosed. Consistent with the duty placed on the professional, it is the responsibility of the professional, not of the court, to make sure that all relevant connections have been brought to light." *In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) (quoting 8 COLLIER ON BANKRUPTCY ¶ 2014.03 (Lawrence P. King et al. eds., 15th ed. rev.1994)) (citations omitted); *see also In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) ("The existence of an arguable conflict must be disclosed if only to be explained away.").

In its Application, DPW provided a list of present and former clients, annexed as Schedules 2 and 3. Three of the clients on the MNT Client List overlap with the five clients listed by DPW as clients with over 1% over DPW yearly revenue.[5] Here, numerous connections have been

---

[5] The three overlapping clients are Barclays Capital Inc., JPMorgan Chase & Co., and Morgan Stanley & Co.

disclosed but because no information has been provided as to what connection prevents or could prevent DPW from working on a specific matter or matters and why MNT – despite all its own client's connections to these cases – is able to be engaged on the specific matter or matters, it is almost impossible to read the DPW and MNT disclosures in a meaningful manner.

## IV.    CONCLUSION

For the reasons set forth in this Objection, the United States Trustee respectfully requests that the Court deny the MNT Application and grant such other relief as is just and proper.

Dated:  New York, New York
        December 12, 2024

                                        WILLIAM K. HARRINGTON
                                        UNITED STATES TRUSTEE

                                By:     /s/ Shara Cornell
                                        Shara Cornell, Esq.
                                        Annie Wells, Esq.
                                        Eric Bradford, Esq.
                                        Trial Attorneys
                                        One Bowling Green
                                        New York, New York 10004